UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James Maurice Lawton, | ) | C/A No.   5:13-cv-02310-MGL-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| Gregory T. Knowlin, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| | ) | |

Petitioner James Maurice Lawton is a state prisoner who filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 22, 23. On December 19, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 24. Petitioner filed a response in opposition to Respondent's Motion for Summary Judgment on March 24, 2014. ECF No. 33. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 22, be granted.

I.      Background

Petitioner is currently incarcerated in the Turbeville Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In 2001, Petitioner was indicted in the February 5th term of the Orangeburg County Grand Jury for first degree burglary (dwelling), and

attempted armed robbery. ECF No. 23-4. On July 19, 2001, a jury trial was conducted before the Honorable James C. Williams in Orangeburg, South Carolina. App. 1.[1] Attorney Crystal Chapman represented Petitioner, and Assistant Solicitor Angela Garrick represented the State. *Id.* Petitioner was found guilty of first degree burglary and attempted armed robbery. App. 298-99. Judge Williams sentenced Petitioner to twenty years confinement on the attempted armed robbery conviction, and to twenty-five years confinement on the burglary conviction, with the sentences to run concurrently. App. 315-16.

II.     Procedural History

    **A. Appeal and First PCR Action**

Trial counsel timely filed and served the Notice of Appeal. The Final Brief of Appellant was filed on April 30, 2002, ECF No. 23-5, and the State filed a Final Brief of Respondent on April 15, 2002, ECF No. 23-6. On January 29, 2003, the South Carolina Court of Appeals issued an order affirming Petitioner's conviction. App. 322-326. The Remittitur was issued on February 14, 2003. ECF No. 23-7. On January 2, 2004, Petitioner filed his first Application for Post-Conviction Relief ("PCR") alleging ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and denial of due process and fair trial. App. 327-32. Petitioner also filed an amendment to his PCR Application on January 2, 2004. App. 333-42. On October 13, 2004, the State filed a Return denying Petitioner's allegations and requesting an evidentiary hearing on Petitioner's ineffective assistance of trial and appellate counsel claims. App. 343-47. On January 18, 2006, an evidentiary hearing was conducted before the Honorable Lee S. Alford. App. 349. Petitioner was present and represented by Glenn Walters, Esq.; Assistant Attorney General Paula Magargle represented the State. *Id.* Petitioner and his trial attorney, Crystal

---

[1] Citations to "App." refer to the Appendix for Petitioner's appeal of his judgment of conviction. That appendix is available at ECF Nos. 23-1, 23-2, and 23-3 in this habeas matter.

2

Chapman, testified at the hearing. App. 351-396. In an Order dated March 31, 2006, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

### SUMMARY OF TESTIMONY PRESENTED AT THE PCR EVIDENTIRAY HEARING, FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Applicant and the Applicant's former trial counsel, Crystal Chapman, testified at the PCR evidentiary hearing.

The Court has reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighed the testimony accordingly. Further, this Court reviewed the Clerk of Court records regarding the subject conviction, the Applicant's records from the South Carolina Department of Corrections, the application for post-conviction relief, the transcripts and documents from the prior proceedings, and legal arguments of counsel. Pursuant to S.C. Code Ann. § 17-27-80 (1985), this Court makes the following findings of fact based upon all of the probative evidence presented.

**Allegation of ineffective assistance of counsel for failing to object to testimony regarding the pager and the subsequent line-up.**

The Applicant testified that trial counsel was ineffective for failing to object to the testimony by one of the victims that he recovered a pager that was ultimately determined to come from the Applicant. Applicant further testified that by the time that the police attempted to get the information about who the pager belonged to, the information was no longer available. Applicant also testified that the police used the information about the pager that came fro[m] the victim to create the line-up in this case. Applicant testified that counsel should have objected to the line-up. On cross-examination, Applicant admitted that the victim/witness did not know Applicant and that the victims were able to pick him out of a line-up.

Counsel testified that she objected to the victims identification of Applicant through the line-up but that the judge allowed this testimony into evidence. Counsel further testified that she believes that she did not object to the testimony about the pager because there had been some pretrial conferences regarding this issue.

This Court finds that the basis of Applicant's allegation is that the initial identification was obtained by hearsay in violation of his Sixth Amendment right

3

to confront and cross-examine witnesses against him. This Court finds that the facts of this case include the following:

Grover Davis and his wife were awakened at approximately 4:00 A.M. by someone who used burglary tools to force open the locked back door of their mobile home and ran down the hall yelling, "Give it up" and "that he would kill them if they did not give it up." Tr. P. 69, ll. 8-9. Grover Davis went into the hallway and encountered a guy with dread locks in his hair who was saying, "Give it up, give it up, give me the money." Tr. P. 99, ll. 18-20. The man had a gun and pointed it at his wife, Lynette, when she walked out of the bedroom. Grover Davis grabbed him and they struggled for some time with each other for control of the gun. The living room was torn up in the process. Lynette jumped on the assailant's back and tried to help her husband. Eventually she ran out of the door and started yelling for help. Grover Davis had an opportunity to view his assailant face to face. In addition to the dread locks he noticed that he had two gold teeth separated by at least one other tooth. He paid close attention to how the assailant looked and was certain he could identify him when he saw him again.

The assailant got sole possession of the hand gun and had been calling out for assistance from someone he called "Dee". Grover Davis ran out of the mobile home and hid behind his neighbor's mobile home. Shots were fired that went into the neighbor's (Timothy Haygood) mobile home. Timothy Haygood testified that he heard shots and saw Lynette running from her mobile home. He was standing in his living room window and saw the assailant as he left the Davis' mobile home. He testified that the light was real good out there and he could see Grover and his assailant fighting in the Davis' living room. He testified that where he was standing in his mobile home was only fourteen or fifteen feet from the Davis home. That he could see the assailant real clearly when he was coming out the front door. He had enough lighting to see him clearly and he informed the detective that he could identify him if he saw him again.

In the aftermath of the incident, Timothy Haygood found a pager that did not belong to him, Grover Davis, or anyone else at the scene. He wrote down phone numbers from the memory of the pager along with the serial number. He gave the pager to the detective but did not tell him he had written down telephone numbers and the serial number from the memory of the pager. Neither he nor Grover Davis knew if the telephone numbers remained in the memory of the pager after they were viewed.

Timothy Haygood took the pager serial number down to Metrocall at the mall. A friend of his named Shelia Johnson worked there but no longer worked there at the time of the trial. She punched the serial number into the computer. The name, James Maurice Lawton, appeared on the screen with an address of something like [illegible] P.154, ll. 11-24.

4

Haygood checked with Grover and neither of them knew anybody by [illegible] James Lawton. They called Detective Bowen and gave him the information. Detective Bowen testified that he was not happy that he had not been told Haygood had taken down the numbers or that he had conducted his own investigation instead of leaving it to law enforcement. Haygood explained that he wanted to know who it was that tried to rob Grover Davis and shot several times into his mobile home. He essentially wanted to know if he knew the persons involved.

Detective Bowen put together a photo lineup that included Applicant. Haygood and Davis were told to see if they could identify any of the persons in the lineup as the person who broke into Davis' home. Each of them picked out Applicant without any trouble. Haygood was shown the lineup first in a room separate from Davis. Davis was not told anything about Haygood's response to the lineup and he was not aware that Haygood had identified the same picture. Davis marked the photo he identified. Haygood was not asked to mark the photo he picked out because Detective Bowen did not want Davis to know whether Haygood has identified one of the photos or, if so, which one. Both of them identified Applicant in the courtroom and stated that it was based on seeing him the day the event occurred and not on the photo lineup.

Arrest warrants were issued for Applicant but it was about a year before he was arrested. The crime occurred on October 23, 1999, and the trial took place on July 19, 2001, about twenty-one (21) months later. Shelia Johnson no longer worked at Metrocall and Metrocall had purged its records that were available in October 1999. Those records were therefore not available to the State.

It is obvious that the police should have obtained the records from Metrocall when they were available. Detective Bowen had taken a job with the Dorchester County Sheriff's Department to begin about twenty (20) days after the crime occurred. Neither he nor anyone else at the Orangeburg County Sheriff's Department properly followed up the investigation of this case after the arrest warrants were issued.

Defense counsel at trial and appellate counsel represented Applicant before the United States Supreme Court decided Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). The reasonableness of their judgment and representation of Applicant should be based on the knowledge available to them at the time. *See* Thornes v. State, 310 S.C. 306, 426 S.E.2d 764 (1993) (finding trial counsel was not ineffective for failure to interview the victim who already gave a damaging statement to the police - counsel, "unless clairvoyant, could not have reasonably known that any additional benefit would accrue to his client"); Judge v. State, 321 S.C. 554, 471 S.E.2d 146 (1996) (finding counsel cannot be incompetent in failing to receive discovery materials from prosecution that they had no reason to know existed). In any event the testimony of Timothy Haygood that he gave the serial number to a friend at Metrocall who punched the number

5

into a computer screen and Applicant's name and address appeared on the screen is not a testimonial hearsay statement prohibited by Crawford. Haygood testified and was subject to cross-examination. Identifying Applicant as the owner of the pager found in the general area of a crime scene does not prove he was there or that he committed a crime. Defense counsel asked Detective Bowen if he had known of pagers getting lost or stolen and he agreed that pagers did get lost or stolen. Defense counsel also stated that the pager could have been lost by someone walking through the trailer park.

Davis and Haygood had an excellent opportunity to see the assailant. They both told the investigating officer that they would have no trouble identifying the assailant if they saw him again. They told Detective Bowen that they did not know James Maurice Lawton when they learned he was the owner of the pager. Each of them separately had no problem picking him out of a photo lineup five or six days after the incident. There is no question that crimes occurred and that Davis and Haygood were victims of violent and life-threatening crimes. They had every reason to properly identify the assailant. The evidence against Applicant is overwhelming. Where there is overwhelming evidence of guilt, a trial counsel's deficient representation will not be prejudicial. Ford v. State, 314 S.C. 245, 442 S.E.2d 604 (1994); *See also* Humbert v. State, 345 S.C. 332, 548 S.E.2d 862 (2001). In Ford, trial counsel failed to request an alibi instruction and his representation was found deficient as a result. However, the evidence of the applicant's guilt in Ford was overwhelming and this Court held that the applicant failed to prove he was prejudiced by the deficient representation.

If the police gain information about a possible perpetrator of a crime from the public that does not prevent their use of a photo lineup which includes the suspected perpetrator. See Rhodes v. State, 349 S.C. 25, 561 S.E.2d 606 (2002).

This Court finds that the testimony of Haygood that he gave the pager serial number to Shelia Johnson, watched her type the number into the computer and saw Applicant's name and address appear on the computer screen is not hearsay. He testified and was subject to cross-examination. He did not testify as to what someone told him but what he did and what he observed. This Court finds that neither Crawford nor the Sixth Amendment right to confrontation prohibit his testimony on this issue. Even if the actions by Shelia Johnson, observed by Haygood could be classified as hearsay, it would not constitute testimonial hearsay as that term is used in Crawford. See State v. Davis, 364 S,C. 364, 613 S.E.2d 760 (2005) and State v. Staten, 364 S.C. 7, 610 S.E.2d 823 (2005).

Further, this Court finds that trial counsel's testimony was credible and the Applicant's testimony was not credible. This Court also finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. Strickland v. Washington; Cherry v. State. This was a matter of trial strategy and not ineffective assistance of counsel. Where counsel articulates a

valid strategic reason for his action or inaction, counsel's performance should not be found ineffective. Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1996). This allegation of ineffective assistance of counsel is denied.

However, even if Applicant has proven the first prong of the Strickland test that his counsel's representation was deficient for failing to object, he must further prove the second prong and that is because of this deficiency there is reasonable probability that counsel's deficient conduct prejudiced the outcome of Applicant's trial. This Court finds that the Applicant has failed to prove the second element of Strickland requiring prejudice. Therefore, Applicant has failed to show prejudice. This allegation of ineffective assistance of counsel is denied.

### Miscellaneous allegations

As to any and all allegations which were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in this Order, this Court finds that the Applicant failed to present any probative evidence regarding such allegations. Accordingly, this Court finds that the Applicant waived such allegations and failed to meet his burden of proof regarding them. Accordingly, they are dismissed with prejudice.

### CONCLUSION

This Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application. Therefore, this application for post conviction relief must be denied and dismissed with prejudice.

App. 400-406. Petitioner did not appeal the denial of his First PCR Application.

**B.  Second PCR Application**

Petitioner filed a Second PCR Application on June 22, 2007, arguing "Ineffective assistance of PCR Counsel; PCR Counsel failed to file a timely notice of appeal of the original PCR matter."  App. 408-12. On September 28, 2007, the State filed its Return requesting an evidentiary hearing on whether Petitioner was denied his right to appeal his PCR Application. App. 413-15.  On August 6, 2008, an evidentiary hearing was conducted before the Honorable Perry M. Buckner.  App.  417.  Petitioner was present and represented by Daniel E. Grigg, Esq.; Assistant Attorney General Richard E. Lackey represented the State. *Id.* Petitioner and his PCR

7

counsel, Glenn Walters, testified at the hearing. App. 419-439. In an Order dated February 6, 2009, the PCR court made the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony at the post-conviction relief hearing. This Court has further had the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weigh the opportunity to observe the witnesses presented at the hearing, closely pass upon their credibility and weight their testimony accordingly. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (1985).
>
> Mr. Walters testified that he represented Applicant at the January 18, 2006 PCR hearing. Mr. Walters testified that Applicant's PCR was denied and dismissed with prejudice. Mr. Walters testified that he had no recollection of a conversation immediately following the hearing in which Applicant alleges to have asked him to file a notice of appeal but admitted that it could have possibly occurred. Mr. Walters testified that he had nothing in his file that indicated whether or not he and Applicant had such a discussion. Mr. Walters testified that he was unaware of an appeal having been filed in this matter. He testified that his normal practice is to file a notice of appeal if his client wants one, but he had no recollection or record of one being filed in this case. Mr. Walters testified that he did not believe Applicant had affirmatively waived his right to appeal.
>
> Applicant testified that Mr. Walters represented him at his first PCR. Applicant testified that his first PCR was denied and dismissed. Applicant testified that he told Mr. Walters, at the conclusion of the January 18, 2006, hearing that he did not think it went well. Applicant testified that he was aware of his right to appeal the decision of the PCR court. Applicant testified that he told Mr. Walters that wanted to file an appeal. Applicant testified that Mr. Walters told him that he would file one on Applicant's behalf. Applicant testified that he spoke with Mr. Walters about an appeal after the hearing, but prior to receiving the actual Order of Dismissal. He testified that he did not bring it up to Mr. Walters again after he received the Order because he thought the previous conversation was sufficient notice to Mr. Walters. Applicant testified that he wants to have a belated appeal from the denial of his first PCR because he requested and was denied an opportunity to seek appellate review.
>
> An *Austin* appeal is used when an applicant is prevented from seeking appellate review of a denial of his or her PCR application, such as when an attorney fails to seek timely review. *Aice v. State*, 305 S.C. 448, 409 S.E.2d 392 (l991). Pursuant to *Austin v. State*, 305 S.C. 453, 409 S.E.2d 395 (1991), a post-conviction relief applicant may petition the South Carolina Supreme Court for discretionary review of the dismissal of their application. *Austin* sets forth the only recognized exception to the rule barring claims of ineffective assistance of post-conviction relief counsel. *Austin* recognizes a general exception to this rule

> where the prior post-conviction relief counsel fails to appeal the denial of the application. A PCR applicant is entitled to such an *Austin* appeal if the PCR judge affirmatively finds either: (1) the applicant requested and was denied an opportunity to seek appellate review; or (2) the right to appellate review of a previous PCR order was not knowingly and intelligently waived. *King v. State*, 308 S.C. 348, 417 S.E.2d 868 (1992).
>
> There is simply no other evidence before this Court to help answer this question other than the testimony of the witnesses. With that being the case, this Court finds that Applicant requested Mr. Walters to file an appeal from the denial of his first PCR and that the failure to file the appeal upon request denied the Applicant the opportunity for appellate review. This Court finds that the right to appellate review was not knowingly and intelligently waived based on the witnesses before the Court.
>
> **IT IS THEREFORE ORDERED:**
>
> 1. Applicant is allowed to petition the South Carolina Supreme Court for discretionary review of the dismissal of the Applicant's previous application for Post Conviction Relief.

App. 442-47. On November 6, 2008, Petitioner attempted to appeal the denial of his First PCR Application by filing a document titled "Discretionary Review" with the South Carolina Supreme Court. ECF No. 23-8. On November 7, 2008, the Clerk of Court for the South Carolina Supreme Court advised Petitioner that his filing would be construed as a Notice of Appeal, but Petitioner had to provide documents that showed that the Notice was served on the State, together with a copy of the two PCR orders at issue. ECF No. 23-9. The Clerk further explained that Petitioner's failure to provide the requested documents may result in a dismissal of his case. *Id.* On November 20, 2008, the Clerk gave Petitioner additional time to provide the court with a copy of the service documents and the PCR orders and again warned that failure to comply would result in dismissal. ECF No. 23-10. A copy of this letter was also sent to Petitioner's PCR counsel, Richard E. Lackey. *Id.* On December 3, 2008, the South Carolina Supreme Court dismissed Petitioner's appeal. ECF No. 23-11. The Remittitur was issued on December 19, 2008. ECF No. 23-12.

### C. Petition for State Writ of Habeas Corpus/Third PCR Application

Petitioner filed a Petition for State Writ of Habeas Corpus, which was subsequently construed as a PCR Application, on March 31, 2009. App. 448-468. The State filed a Return and Motion to Dismiss on July 2, 2009. App. 474-478. On September 14, 2009, an evidentiary hearing was conducted before the Honorable J. Edgar W. Dickson. App. 480. Petitioner was present and represented by Russell A. Blanchard, Esq.; Assistant Attorney General Mary S. Williams represented the State. *Id.* During the hearing the State consented to a belated review of the First PCR Application and it was noted that Petitioner's PCR counsel, Russell A. Blanchard, would file the Notice of Appeal. App. 481-82. An order dismissing Petitioner's Third PCR Application and granting Petitioner the right to file a belated appeal from the denial of his First PCR Application was filed on November 24, 2009. App. 485-488. Petitioner, represented by Wanda H. Carter of the South Carolina Commission on Indigent Defense, timely filed a Petition for Writ of Certiorari pursuant to *Austin v. State*.[2] ECF No. 23-14. Petitioner presented one issue on appeal and argued: "Trial counsel erred in failing to object to Timothy Haygood's repetition of hearsay information received from Metro Call Pager Company employee Sheila Johnson, who was not available to testify at trial or be cross-examined at trial, but who relayed to Haygood the name of petitioner as the owner of a pager found at the crime scene, as this information ultimately convicted petitioner of the crimes charged via the victim's identification of petitioner as the perpetrator after viewing a photographic lay-out that contained petitioner's picture. Petitioner was prejudiced because sans this inadmissible hearsay evidence which linked petitioner to the crime, there was no other proof whatsoever that petitioner was guilty of the crimes charged." *Id.* at 6. The State filed is Return to the Petition for Writ of

---

[2] 409 S.E.2d 395 (1991).

Certiorari on June 10, 2011. ECF No. 23-16. The Petition was transferred to the South Carolina Court of Appeals on January 13, 2012. ECF No. 23-17. On July 2, 2013, the South Carolina Court of Appeals denied certiorari. ECF No. 23-18. The Remittitur was issued on July 23, 2013. ECF No. 23-19. This habeas Petition was filed on August 21, 2013.[3]  ECF No. 1.

III.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE:  Ineffective Assistance of Counsel.
>
> Supporting facts: (1) Counsel failed to request a Batson hearing. (2) Counsel failed to object to hearsay testimony at trial. (3) Counsel failed to object to violation of applicant's constitutional right to confrontation. (4) Counsel failed to properly advise applicant of his right to testify. (5) Counsel failed to request additional jury instruction regarding proof of presence beyond a reasonable doubt.
>
> GROUND TWO:  Ineffective Assistance of Appellate Counsel.
>
> Supporting facts:   Applicant was denied effective assistance of appellate counsel due to counsel failing to raise meritorious issues on appeal regarding the suggestive identification procedures at trial.
>
> GROUND THREE:  Denial of due process and fair trial
>
> Supporting facts: Violation of Sixth and Fourteenth amendment under confrontation clause and equal protection clause.

ECF No. 1 at 5-8.

---

[3] *See Houston v. Lack*, 487 U.S. 266, 271 (1988)(*pro se* prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court). Although the Petition was docketed as filed on August 26, 2013, the envelope for the Petition reflects it was deposited in the SCDC mailing system on August 21, 2013. ECF No. 1-1.

11

      B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs*., 901 F.2d 387 (4th Cir. 1990).

  C.  Habeas Corpus Statute of Limitations

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy,* 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

IV. Analysis

  A. Petitioner's Application Is Time-Barred

Respondent argues that Petitioner's habeas Petition should be dismissed because the Petition was filed after the expiration of the AEDPA's one year statute of limitation. ECF No. 23 at 13. The AEDPA one-year period of limitation begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Because Petitioner did not seek review by the United States Supreme Court, the AEDPA's one-year statute of limitations began running "at the expiration of the time" for seeking direct review in state court. 28 U.S.C. § 2244(d)(1)(A). Petitioner's judgment of conviction therefore became final "when his time for seeking review with the State's highest court expired." *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).

As previously summarized, Petitioner timely appealed his convictions and sentences and his appeal was perfected with the filing of a Final Brief of Appellant that was dismissed by the South Carolina Court of Appeals on January 29, 2003.  ECF No. 23-5; App. 322-326. To pursue review with the South Carolina Supreme court by petitioning for a writ of certiorari, Petitioner was required to first petition the Court of Appeals for rehearing. *See* Rule 242(c), SCACR (providing that a decision of the Court of Appeals "is not final for the purpose of review by the Supreme Court until the petition for rehearing or reinstatement has been acted on by the Court of Appeals."). Because Petitioner did not file a Petition for Rehearing, his conviction became final on February 13, 2003, after the time period for filing a petition for rehearing had expired. *See* Rule 221(b), SCACR (stating that petitions for rehearing must be actually received by the appellate court no later than fifteen (15) days after the filing of the opinion, order, judgment, or decree of the court).  Petitioner's filing of his first PCR Application on January 2, 2004, tolled the one-year limitations period, *see* 28 U.S.C. § 2244(d)(2); 323 days had elapsed when Petitioner filed his First PCR Application, leaving 42 days within which Petitioner could timely file a federal habeas petition. The statute of limitations remained tolled until May 12, 2006, which is 30 days after the PCR court's order was filed on April 12, 2006.  *See* Rule 203, SCACR (stating that a notice of appeal shall be served on all respondents within thirty days after receipt of written notice of entry of the order or judgment).   Petitioner did not file his habeas action until August 21, 2013, approximately 2616 days after the statute of limitations had run. Clearly, Petitioner's habeas Petition is untimely. The filing of Petitioner's second PCR Application on June 22, 2007, 364 days after the AEDPA statute of limitations expired, did not toll the statute of limitations because the limitations period had already expired when the application was filed. Thus, Petitioner's habeas Petition is untimely under 28 U.S.C. § 2244(d) and must be dismissed.

### B.  The Statute of Limitations Should Not Be Equitably Tolled

The AEDPA's statute of limitations is subject to equitable tolling, which could, in effect, extend the final date for filing a habeas petition. *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The Fourth Circuit has underscored the very limited circumstances in which equitable tolling of the AEDPA's limitations period will be permitted, holding that a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris*, 209 F.3d at 330. The respondent bears the burden of asserting the AEDPA's statute of limitations, *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002); the petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the equitable-tolling doctrine, *Rouse*, 339 F.3d at 246.

In 2010, the United States Supreme Court considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010); *cf. Pace,* 544 U.S. 408, 418 n.8 (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be

15

equitably tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418)).

Petitioner argues that he is entitled to equitable tolling of the AEDPA statute of limitations. ECF No. 33. Petitioner outlines in detail the appellate and post-conviction relief history in his case, noting that his two PCR counsels failed on two separate occasions to file a Notice of Appeal of his First PCR Application. *Id.* at 2-3. Petitioner contends that "he has been diligently pursuing his rights and extraordinary circumstances have stood in the way of his quest." *Id.* at 1. Petitioner argues that he

> never had adequate assistance from the close of his direct appeal proceeding to the close of his post-conviction proceedings and [i]t is clear that [he] was pursuing his right[s] diligently, and from the ineffective assistance of appellant counsel's performance that extraordinary circumstances stood in his way and prevented timely filing.

*Id.* at 3.

The undersigned finds that Petitioner cannot meet the two *Holland* factors to establish that he is entitled to equitable tolling of the AEDPA statute of limitations as Petitioner is unable to show that he has been pursuing his rights diligently. *Holland*, 560 U.S. at 649. Petitioner allowed approximately fourteen months to pass before he took any action concerning the appeal of his First PCR Application, but does not provide the court with any explanation about what actions he took concerning his appeal during this time period. Petitioner also does not explain why, after being granted a belated appeal following his Second PCR Application, he did not, even after being granted an extension, serve opposing counsel with his discretionary review motion, as instructed by the court, which resulted in the Petitioner's Notice of Appeal of his First PCR Application being dismissed. Because the undersigned finds that Petitioner had not been

diligently pursuing the appellate rights related to his PCR Application, the undersigned finds that equitable tolling of the statute of limitations is not merited. Based upon the foregoing, the Petition was not timely filed, and is barred by 28 U.S.C. § 2244(d)(1).[4]

V.	Conclusion and Recommendation

Therefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 22, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

April 14, 2014	Kaymani D. West
Florence, South Carolina	United States Magistrate Judge

---

[4] Because the court finds that the statute of limitations bars Petitioner's § 2254 petition, it is precluded from addressing the merits of his claims. *See Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995) (finding that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits).